UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE GRAND JURY SUBPOENAS
04-124-3 and 04-124-5

CASE NO. 04-X-73533 – REDACTED
OPINION AND ORDER

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

_____/

REDACTED OPINION AND ORDER[1]
(1) GRANTING PETITIONER'S MOTION TO INTERVENE
(2) ORDERING SUBMISSION OF DOCUMENTS AT ISSUE AS DESIGNATED BY
INTERVENOR, TO WIT, DOCUMENTS[2] IN CORPORATION'S POSSESSION
REFERENCING ATTORNEYS, TO BE SUBMITTED TO GOVERNMENT
PRIVILEGE/TAINT TEAM FOR REVIEW AS TO POTENTIAL ATTORNEY
CLIENT/WORK PRODUCT PROTECTIONS, AND THEN TO THE COURT FOR FINAL
DETERMINATION

INTRODUCTION

        This case comes to this Court as a result of the issuance of two subpoena *duces tecum* by

a Federal Grand Jury in the Eastern District of Michigan to Corporation.  Corporation does not

contest the subpoenas.  Consistent with the secrecy that attaches to Grand Jury matters pursuant

to Federal Rule of Criminal Procedure 6(e), the opinion is filed under seal.  This is a Redacted

Opinion and Order.

        Proposed Intervenor, Corporation's former Chief Executive Officer and former sole

shareholder ("Intervenor"), filed a Motion to Intervene to assert his personal attorney-client

_____

        [1]An unredacted version of this opinion was filed under seal with the Court on September
7, 2005.  Because this grand jury matter requires secrecy under Federal Rule of Criminal
Procedure 6(e), parties names have been redacted.

        [2]Electronic and written documents in Corporation's possession.

1

privilege and work product protection as to documents, sought by the Grand Jury subpoenas, which are located at Corporation locations in the Eastern District of Michigan.

The Court is satisfied that Proposed Intervenor is entitled to intervene.[3]  Under Federal Rule of Civil Procedure 24(a)(2) "Colorable claims of Attorney-Client and Work Product Privilege qualify as sufficient interests to ground intervention of right."  *In Re Grand Jury Subpoena*, 274 F.3d. 563, 570 (1st Cir. 2001).

Intervenor's Supplemental Memorandum of August 10, 2005, indicates that the scope of the instant dispute is narrow.  Intervenor is not proposing a review of all documents responsive to the subpoena, but "only the documents referencing attorneys on the designated attorney list." Intervenors Supp. Memo P.8.  Intervenor states the dispute as being:

> [W]hether a paralegal [employed by Intervenor] or a taint team [of government employees] screens the paper record and whether the taint team gets to see the documents claimed to be privileged.

*Id*. at 9.

The first subpoena seeks *inter alia* records including those in the electronic medium, from January 1, 1997 to the present relating to Corporation's financial statements and reports, transactions between Corporation and affiliated companies and fairness opinions relating to them, transactions between Corporation and Intervenor and his family members, and:

> 12.  agreements between Corporation and [certain attorneys]

The second subpoena seeks all records prepared by, directed to, or otherwise identifiable

---

[3]Other Corporations owned and controlled by Intervenor ("Affiliated Companies") have joined in Intervenor's motion.  The Affiliated Companies are "piggybacking" upon the content of Intervenor's motion.

with any former officer of Corporation or its subsidiaries, including Intervenor.

Corporation has waived the attorney-client privilege/protection with respect to the documents sought by the subpoenas. Corporation has filed for bankruptcy protection in the Eastern District of Michigan. In *CFTC v. Weintraub*, 471 U.S. 343 (1985), the Supreme Court held that a trustee in bankruptcy appointed to conduct the affairs of a bankrupt corporation had the authority to waive the attorney-client privilege.

An employee or officer of the corporation (Intervenor) generally may not prevent a corporation from waiving the attorney-client privilege arising from communications between the corporation's counsel – in house or outside – and officers of the corporation. See *In re: Grand Jury Proceedings (Doe)*, 219 F.3d 175 (2d Cir. 2000), referring with approval to *United States v. Teamsters*, 119 F.3d. 210 (2d Cir. 1997).

In the instant case, Intervenor was an employee of the corporation, working at the corporation's offices. Intervenor has not proffered any evidence that Intervenor personally paid counsel who provided advice that he is now seeking to privatize. To the extent that Intervenor was utilizing counsel on Corporation's "dime," and Corporation has waived the privilege/protection, Intervenor does not have any protection. So too, if the documents in Corporation's possession, indicate that Intervenor copied third persons, or provided them to third persons.

Time and again, courts have limited the scope of the attorney-client privilege because it "stands in derogation of the public's right to every man's evidence . . . it ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." *United States v. Teamsters*, at 214, citing *In re Horowitz*, 482 F.2d 72, 81 (2d Cir) (cert. denied) 414

3

U.S. 867 (1973), quoting 8 Wignore, *Evidence* §§ 2192, 2291 at 70, 854 (1961).

The Supreme Court pointed out in *Weintraub*:

> Displaced managers may not assert the privilege over the wishes of current managers, even as to statements that the former may have made to counsel concerning matters within the scope of their corporate duties.

*Commodity Futures Corp. v. Weintraub* at 349. When Intervenor was dealing with Corporation matters that also involved his personal matters, and consulting with corporate counsel, he did not have a personal privilege. Intervenor has not provided this Court with documentary evidence that his communications contained in documents, intentionally protected from third parties, located at Corporation, were with private counsel that he hired and paid for personally.

As to conversations with corporate counsel, for the reasons set forth below, Intervenor has not met the stringent requirements for invoking the privilege; among other things, he has not established that he made it clear to corporate counsel that he sought legal advice on personal matters, clearly not Corporation matters, and that the lawyer saw fit to accept and give communications knowing that possible conflicts could arise. *In re Grand Jury Proceedings, Detroit, Mich., August 1977 (Jackier)*, 434 F. Supp. 648, 650 (E.D. MI 1977), aff'd 570 F.2d 562 (6th Cir. 1978).

Further, as an alternative holding discussed *infra*, in rejecting Intervenors Motion, the Court notes that Intervenor has failed, without justification, to produce a privilege log.

For the reasons set forth below, the Court will grant Intervenor's motion to intervene. The Court orders submission of the grand jury subpoenaed documents at issue to a government privilege/taint team for an initial determination of the potential applicability of attorney-client privilege/work product doctrine protections. Thereafter, the documents selected by the

government team shall be submitted to this Court for final determination.  The Court has, in the extraordinary caution selected this taint/privilege team procedure, despite the fact that the Court, as discussed *infra*, concludes, alternatively, that Intervenor is not entitled to relief for failure to produce a privilege log.

## BACKGROUND

The federal grand jury is a creature of the judiciary.  Federal Rule of Criminal Procedure 6(a)(1) states: "When the public interest so requires, the Court must order that one or more grand juries be summoned."  F.R. Crim. P. 6(e)(6) states that "subpoenas relating to grand jury proceedings must be kept under seal . . . to prevent the unauthorized disclosure of a matter occurring before a grand jury."

The Supreme Court, citing with approval, *United States v. Dionisio*, 93 S.Ct. 764, 773 (1973) held in *United States v. R. Enterprises, Inc.*, 111 S.Ct. 722, 727 (1991), that grand jury subpoenas generally should be complied with, free of detours and procedural delays:

> Any holding that would saddle a grand jury with minitrials and preliminary showings would assuredly impede its investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws.

At the same time, the Supreme Court has recognized an attorney-client privilege, *Upjohn v. United States*, 449 U.S. 383 (1981), and work product protection, *Hickman v. Taylor*, 329 U.S. 495 (1947), *United States v. Nobles*, 422 U.S. 225 (1975).  The work product doctrine is "now codified in part in Rule 26(b)(3) of the Federal Rules of Civil Procedure and Rule 16(b)(2) of the Federal Rules of Criminal Procedure."  *In re Grand Jury Subpoenas*, 318 F.3d 379, 383 (2d Cir. 2003).  The Supreme Court has also recognized the crime-fraud exception with regard to attorney-client communications.  *United States v. Zolin*, 491 U.S. 554 (1989).

The Supreme Court, in *United States v. R Enterprises*, stated that there is a "strong governmental interest in affording grand juries wide latitude, avoiding minitrials on peripheral matters, and preserving a necessary level of secrecy:"

> Consequently, a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance.

111 S.Ct. at 728.

In the instant case, Corporation, the recipient of the subpoenas, has waived any privileges/protections with regard to the documents at issue in its possession. The critical issue is whether Intervenor has a valid attorney-client privilege or work product protection with regard to documents located in Corporation's buildings, sought by the subpoenas at issue, and further, if such protections could apply, whether examination of documents at issue should be done initially by the Court, a master appointed by the Court pursuant to Federal Rule of Civil Procedure 53, a paralegal in the employ of Intervenor's counsel, or a government privilege/taint team. A government privilege/taint team is composed of an assistant U.S. Attorney and a Government agent, who are walled off from any communication with the U.S. Attorneys and agents involved in the case.

Intervenor's address was c/o Corporation. Intervenor's Supplemental Memorandum, U.S., S.E.C., Corporation Form 10-K. (hereinafter Corporation 10 K).

Pre-Bankruptcy, Intervenor owned 100% of Corporation and was its Chairman and Chief Executive Officer.

Corporation filed for bankruptcy protection under Chapter 11 in the Eastern District of Michigan. One year later, a forensic audit by an accounting firm, hired by Corporation's new

6

management, determined that in the six year period preceding the bankruptcy filing, Corporation

paid over 300 million to Intervenor's affiliated companies for products and services whose fair

market value appeared substantially less than the $300 million plus figure.

Corporation and Intervenor entered into a Separation Agreement in which Intervenor

resigned all his positions at Corporation and received, *inter alia,* the exclusive, uninterrupted use

of his Corporation office.[4]  The Agreement states in the opening two paragraphs:

> this Separation Agreement (the "Agreement") is made and entered
> into . . . by and between [Intervenor] ("Employee") and Company.
>
> **WHEREAS**, Employee is a current manager and <u>employee of the
> Company</u> . . . .

Separation Agreement. (emphasis added).

The Court notes, significantly, that the Separation Agreement does not reference any

privacy/protection zone established prior to its date.  Paragraph 2(d) sets forth a limited

"Severance Period" which provides:

> (d) for a period (the "Severance Period") equal to the lesser of two years and the
> date, if any, on which (w) the Company's plan of reorganization under Chapter 11
> of the Bankruptcy Code . . . is confirmed and the transactions contemplated under
> that certain Contribution Agreement, the assets of the Company and its
> Subsidiaries are sold, either through a plan of reorganization under Chapter 11 of
> the Bankruptcy Code or pursuant to Section 363 of the Bankruptcy Code.

In fact, the Severance Period terminated when the Bankruptcy Code section 363 sale of

the Corporation assets closed.

Paragraph 2(e) of the Separation Agreement states:

> (e) during the Severance Period, permit the employee to continue
> the exclusive, uninterrupted use of the office . . . and the use of the

---

[4]The Separation Agreement was never approved by the Bankruptcy Court.

> office equipment. . . the Employee shall have the right to store his
> personal records at such office; and the Company agrees that it
> shall have no right of access to such records, except in connection
> with litigation matters between the Company and the Employee,
> and then only pursuant to service of proper legal process and in
> compliance with all applicable rules and court orders relating to
> discovery.

This clause gave Intervenor, during the Severance Period, permission to use on-site office

and office equipment, and the right to store his personal records at that office.  In addition,

Corporation agreed to not access the records during the Severance Period, except for litigation

with Intervenor.   Since the sale pursuant to Section 363 of the Bankruptcy Code closed,

Paragraph 2(e) lapsed and has had no legal effect since.  Thus, at the time of this Court's August,

2005 hearing on the instant motion, Paragraph 2(e) of the Separation Agreement had lapsed.

Paragraph 2(f) does not reference any Severance Period, or other time period.  Paragraph

2(f) states that Corporation will

> promptly return to the Employee all personal records of the
> Employee, and all records pertaining to companies owned or
> controlled by the Employee, other than the Company and the
> Subsidiaries, which are in the possession of the Company or any of
> the Subsidiaries, without retaining any copies thereof (other than
> copies obtained in connection with litigation matters between the
> Company and the Employee, and then only pursuant to service of
> proper legal process and in compliance with all applicable
> discovery rules and court orders relating to discovery.

As discussed, *infra,* the Court concludes that any rights created between the parties in

this private agreement between Intervenor and Corporation, do not undercut the grand jury's

right to secure evidence from Corporation.   More important, and as a way to avoid the issue of

the impact of Paragraph 2(f) on the instant case, there is no evidence that Intervenor ever

asserted that he had any personal records at Corporation.  Nor is there evidence that Intervenor

8

ever requested that any documents at Corporation be returned, prior to the instant subpoenas.

There are no pre-Separation Agreement documents, evidencing agreement(s) between the Corporation and then-employee Intervenor specifying any special privacy interests running to employee Intervenor.  Employee Intervenor, while using the Corporation's office and the Corporation's equipment, did not have an expectation of privacy as to items left in the open, in Corporation files, on Corporation computers, or copied or shown to the Corporation or third parties.

The aforementioned Corporation 10-K form indicates that Intervenor chose to operate Corporation through a corporate entity, and further chose to utilize the Corporation facility and Corporation computers to conduct business with his personal entities.

Intervenor's Supplemental Memorandum at Page 4, argues for a reasonable expectation of privacy:

> Intervenor owned the business, and it is well established that a business owner has a reasonable expectation of privacy in communications at his place of business.  *See e.g.*, *New York v. Burger*, 482 U.S. 691, 699 (1987).

The *Burger* decision is not on point. *Burger* involved an individual owner of a junkyard and questioned whether the New York state statute authorizing warrantless inspections of junkyards was unconstitutional.  The Supreme Court found that New York's statute came within the Fourth Amendment's exception to its warrant requirement for administrative inspections for closely regulated businesses.  The Supreme Court acknowledged that a business owner has a reasonable expectation of privacy in communications at his place of business.  On the other hand, the Supreme Court noted "[a]n expectation of privacy in commercial premises, however, is different from, and indeed less than, a similar expectation in an individual's home."  *Id.* at 669.  In the

9

instant case, Intervenor was an employee of the corporate owner of a business, and thus did not have the same expectation of privacy as Mr. Burger. Furthermore, *Burger* simply noted a long standing principle, that the Fourth Amendment's prohibition on unreasonable searches applies to commercial premises. This basic tenet of constitutional law is not helpful to Intervenor.

Intervenor does not possess special rights of privacy or privileges as to documents exposed to third parties, or created in conjunction with the corporation. Thus, to the extent that Intervenor claims a privilege or protection to documents that reference an attorney, where that document was exposed to, or copied to Corporation or a third party, or created on behalf of Corporation, or in his capacity as a Corporation employee, there is no privilege or protection.

While Corporation employee Intervenor was engaged in a multitude of private business dealings with Corporation while employed at Corporation, whether or not they were in the best interest of Corporation, there is no protection of the records of these extracurricular activities with Corporation.

Evidence provided to the Court by Intervenor establishes that Corporation employee Intervenor was paying millions of Corporation dollars to his personal entities while serving as Corporation's CEO, in transactions that were "not the result of arms-length bargaining . . ." . Corporation 10-K. As noted before, an accounting report commissioned by post-Intervenor Corporation, points out that more than $300 million Corporation dollars were paid to Intervenor's Companies for services and products worth less than $300 million dollars.

Intervenor contends that he was using Corporation paid lawyers and, perhaps in a few situations, separate attorneys for his personal businesses. But, if he was contracting between Corporation and an Intervenor entity, using the same attorney for the transaction, and

10

Corporation has waived the privilege, he cannot claim a privilege.  The Corporation's 10-K

scenario of dealings  between Intervenor's entities and Corporation does not provide him with

special privacy privileges, unless he can evidence – not with "today," post-hoc affidavits, but

with previous bills/receipts/cancelled personal checks, letters of understanding, relating to

personal and private legal services, that he paid for the services personally.  Further, Intervenor

must establish, to receive protection, that these "personal" documents did not involve dealings

with Corporation, that he did not expose copies to third parties, and that did indicate an intent to

exercise an attorney-client privilege and/or the work product doctrine.  To the extent that

Intervenor, a Corporation employee, was using Corporation-paid lawyers for his personal

business, or Corporation offices for personal business, that does not establish his claims of

personal privacy and/or privilege, and/or work product protection.

As to whether the attorneys with whom Intervenor communicated were "corporate

counsel" or Intervenor's personal attorneys, the burden is on Intervenor to prove that the

attorneys were not acting for Corporation. See *In re Grand Jury Proceeding*, (Jackier) 434 F.

Supp. 648 (E.D. MI 1977); aff'd 570 F.2d 562 (6th Cir. 1978).  Intervenor's counsel

acknowledged at oral argument that at least some of the "personal" attorneys at issue, were the

same attorneys used by Corporation in many cases.  ("In many cases, yes, your Honor, I hope

that's not surprising for a business that's a closely held business.") (Attorney for Intervenor)

Further, even if Intervenor can establish that a lawyer did not act other than as his personal

attorney, on a completely personal matter, he must also establish that the document in question

was not exposed to third parties, including Corporation, thereby eliminating his

privilege/protection.  Intervenor has not provided the Court with evidence, as to a specific matter

11

that personal counsel, hired and paid by Intervenor created a personal document, that was kept private that Intervenor stored in his personal office at Corporation.

At the same time, the Court recognizes that if Intervenor had a personal document addressed to him on a confidential basis at Corporation, and kept that private document in a locked place in his private office, the fact that he stored it in his Corporation office does not strip him of his right to claim the attorney-client privilege or work product protection as to specifically-labeled personal, confidential attorney client work product documents seeking legal advice regarding personal matters, not exposed to third parties.

## LEGAL DISCUSSION

A 2001 First Circuit decision has particular relevance to the instant case. In *In re Grand Jury Subpoena (Newparent)* 274 F.3d 563, 567 (1st Cir. 2001), the First Circuit dealt with a "subpoena duces tecum issued by a federal grand jury to a corporation," that waived all claims of privilege. Former employees intervened, and moved to quash the subpoena.

The First Circuit limited an individual's privilege, in these circumstances, "to the extent that communications made in a corporate officer's personal capacity are separable from those made in his corporate capacity." *Id*. at 568. In *Newparent*, the Intervenors did not allege that any of the subpoenaed documents were solely privileged to them, but rested instead on a claim that the documents were jointly privileged. In the instant case, Intervenor contends that certain documents were solely privileged as to him, and others were jointly privileged. Intervenor contends that as a business owner he had the privilege, and thereafter contends that even if Corporation, his employer, saw the documents, he still had a privilege. Intervenor's Supp. Memo P.4.

To the extent that Intervenor posits a joint privilege with Corporation, his argument fails because there is no evidence of any joint privilege agreement. Counsel for Intervenor conceded at a hearing held on the instant motion on August 3, 2005, that he was not aware of any joint defense agreement. Hearing, TR at 23. Further, Counsel for Corporation stated in a letter to Intervenor's counsel that he was not aware of any joint defense agreement entered into between Intervenor and Corporation.

Intervenor further contends that the May, 2004 Separation Agreement between himself and Corporation, provided him with additional privileges/protections. The First Circuit noted, and this Court agrees, that "privileges are created, and their contours defined, by operation of law, and private agreements cannot enlarge their scope." *Id*. Thus, the Separation Agreement certainly does not provide Intervernor with a privilege as to documents created prior to that date. But going further, the Separation Agreement does not provide Intervenor with a privilege. thereafter, as to documents sought by the grand jury which Intervenor left at Corporation and never requested. In the instant case, as in *Newparent*, there was no enforceable prior joint defense agreement.

In *Newparent*, Intervenors noted simultaneous representation by an attorney of corporate and individual clients. To the extent this occurred in the instant case, this fact does not provide Intervenor with a privilege as to co-representation matters, where the privilege was waived by Corporation.

Although Intervenor has not evidenced any joint defense agreements between himself and  Corporation, he contends that a joint client privilege exists between himself and Corporation. Intervenor cites a Sixth Circuit decision, *Grand Trunk Western R. Co. v. H.W.*

13

*Nelson Co., Inc.*, 116 F.2d 823, 835 (6th Cir. 1941), as supporting a joint client or common interest privilege "where clients are represented by the same attorney on the same matter."

Intervenors Supp. Memo P.7.  Intervenors partially quote the following from *Grand Trunk*:

> the rule is applicable what [sic: "that"] when two persons employ a lawyer as their common agent, their communications to him as to strangers will be privileged, but as to themselves, they stand on the same footing as to the lawyer . . . .

The Court sets forth the totality of the quote:

> The conversation under the circumstances was not privileged.  The rule is applicable what  [sic: "that"] when two persons employ a lawyer as their common agent, their communications to him as to strangers will be privileged, but as to themselves, they stand on the same footing as to the lawyer and either can compel him to testify against the other as to their negotiations in any litigation between them when the subject of the conversation is competent.

*Id*. at 14.  In the instant situation, Corporation has waived the privilege, therefore, *Grand Trunk* is not helpful to Intervenor.

Intervenor's argument references multiple counsel, some of whom represented the corporation as well, and some, or at least one counsel, who appears to have represented Intervenor only personally.

As to corporate counsel, this Court agrees with the reasoning set forth in *Newparent*:

> The default assumption is that the attorney only represents the corporate entity, not the individuals within the corporate sphere, and it is the individual's burden to dispel the presumption.

*Id* at 571.

The First Circuit adopted the *Bevill*, *Bresler* five benchmark test to determine when this presumption bursts.  *Id*. at 571-572.  The Intervenor must show that:

1. they approached counsel to seek legal advice
2. they made it clear to counsel they were seeking legal advice in

14

their individual rather than representative capacity
3.  counsel chose to communicate with them in their individual
capacity, knowing that a possible conflict might arise
4.  that their conversations with counsel were confidential
5.  that the substance of their conversations with counsel did not
concern matters within the Corporation or the general affairs of the
Corporation

This test, adopted by the First Circuit in *Newparent*, was initially adopted by the Third Circuit in

*In re Bevill, Bresler & Schulman*, 805 F.2d 120 (3d Cir. 1986), and thereafter followed *In re*

*Sealed Case*, 29 F.3d 715, 719 n.5 (D.C. Cir. 1994); *Grand Jury Proceedings v. United States*,

156 F.3d 1038, 1041 (10th Cir. 1998); *United States v. Teamsters*, 119 F.3d 210, 215 (2d Cir.

1997).  This Court will utilize this test.

In the instant case, this Court does not find documentation establishing that Intervenor

has demonstrated that when he initially approached most counsel, he made it clear that he was

seeking legal advice in his individual rather than in their representative capacities.  There is no

evidence by the way of a retention letter, or personal check confirming such an arrangement.

This Court has not been provided evidence that Intervenor established that most counsel saw fit

to communicate with him in his individual capacity.

The Court acknowledges that Intervenor has submitted declarations of Attorney A and

Attorney B that state that they proffered legal advice to Intervenor exclusively in his personal

capacity.  To the extent that their communications were protected from Corporation, and other

third parties, there may be a valid privilege.  The Court notes, however, that there is a glaring

lack of specificity to Intervenor's personal privilege claim, as discussed more fully *infra.*

This Court concludes that, apart from those alleged excluded personal communications

supported by affidavits from Attorneys A and B, Intervenor has not established that the

15

substance of his conversations with other counsel did not concern matters within the general affairs of Corporation.   Intervenor points to "dual" communications – discussions between the same parties in their capacities as corporate officers and corporate counsel, respectively about matters of concern to Corporation.  This "dual" communication scenario would apply to communications relating to Corporation's dealings with Intervenor and his affiliated companies. These communications are not protected as to Intervenor.

This Court joins the First Circuit in *Newparent* in rejecting Intervenor's attempt to treat such "dual" communications as jointly privileged such that the consent of all parties would be required to waive the privilege:

> permitting a joint privilege of this type would unduly broaden the attorney-client privilege by allowing parties outside a given attorney-client relationship to prevent disclosure of statements made by the client.

*Id*. at 572.

Even if there were a joint communication privilege with regard to a communications with a single attorney, the privilege would not apply in the instant case where there is a criminal investigation in which one former co-client (Corporation) is willing to aid in the prosecution of the other, in this case a corporate officer who owed a fiduciary duty to the corporation:

> [W]e hold that a corporation may unilaterally waive the attorney client privilege with respect to any communications made by a corporate officer in his corporate capacity, notwithstanding the existence of an individual attorney-client relationship between him and the corporation's counsel.

*Newparent* at 573.  The reasoning supporting this conclusion in *Newparent* is compelling:

> [W]e think it significant that the fifth prong of the *Bevill* test is stated in the negative: communications may be individually privileged only when they "[do] not concern matters within the company or the general affairs of the company," rather than when

16

> they do concern an individual's rights.  *Id.* at 123 (emphasis
> supplied).

*Newparent* at 573 quoting in part *Bevill*.  Accordingly, the First Circuit in *Newparent* held that

the former officers could "only assert an individual privilege to the extent that communications

regarding individual acts and liabilities are segregable from discussions about the corporation."

*Id*.  This is significant regarding the instant case evidencing, per the Corporation 10 K, self-

dealing between Intervenor as CEO of Corporation, and Intervenor who at the same time was the

owner of companies receiving hundreds of millions of dollars from Corporation.

Thus, with regard to Intervenor's claim of privilege as to work done for both Corporation

and him, the First Circuit held in *Newparent* that even if there was a valid joint defense

agreement, Intervenor, one of the parties, cannot "preclude disclosure of work product by

another party on whose behalf the work originally was performed.  Nor can the parties,

[Corporation and Intervenor], by agreement, broaden the scope of the privilege that the law

allows.  Such an agreement would contravene public policy (and, hence, would be

unenforceable)."  *Newparent* at 574-75.  This Court must focus on the documents, when they

were created, who created them, and then, follow them from creation to potential exposure to

third parties, to the instant grand jury subpoenas *duces tecum*.

As to the second subpoena, if there are any documents, purely personal, between

Intervenor and his own attorney(s), not copied to Corporation or a third party, that remained on

the premises, and are subject to the second subpoena, the government privilege/taint team will

protect Intervenor's interest.

Intervenor raises a claim of segrebility as to documents and communications with certain

exclusively private counsel, but given the massive intermix of matters by Intervenor between

Corporation and his entities, it is best left to the Government privilege/taint team to search for any such documents, confirm their existence, and then send them to the Court for final determination. The Court instructs the Government privilege/taint team, that when in doubt, it should remove the document and send it to the Court for a final determination.

On a separate tack, but one which is also fatal to Intervenor's case, the Court notes that Intervenor, as in *Newparent*, has failed to generate a descriptive list of the documents alleged to be privileged.

In the instant case, Intervenor lists many law firms as his private counsel and created documents on papers that would support his claims of attorney-client and work product protections. Insofar as this is his claim, it is a logical assumption that these "private" attorneys are in possession of documents that they created or received from Intervenor that would support Intervenor's claims of privilege as against duplicates of these documents in Corporation's possession. Yet, no document has been provided to this Court by Intervenor in support of his claim that it was created by a specific counsel as Intervenor's personal attorney, a copy of which is in Corporation's possession, that Intervenor contends supports his protection claims.

Simply put, Intervenor's designated personal attorneys can provide the Court with a copy of the documents, also in Corporation's possession, which Intervenor claims are privileged/protected. The Court could then examine the document(s) to validate or deny the privilege. This has not been done by Intervenor.

Intervenor's failure to provide the Court with those documents in attorneys' possession dooms Intervenor's protection claims. As the First Circuit stated in *Newparent*:

> That dooms the intervenor's claim of attorney-client privilege *see Grand Jury Proceedings*, 156 F.3d at 1042 (rejecting claim of

> individual privilege when "appellant has not produced for [the court's] review the particular documents at issue nor has he otherwise adequately demonstrated in the record that any of the documents ordered produced were limited to the topic of his <u>individual</u> legal rights and responsibilities") and renders moot the question of whether Roe and Moe also possessed an attorney-client privilege in these documents.

*Id*. at 574 (emphasis in original).

The Government Response notes that Intervenor has "failed to present sufficient information with respect to the items to which their claim of privilege attaches" *Id*. at 575, *Newparent* quotes F. R. Civ. P. 45(d)(2) where the operative language is mandatory, and "courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log." *Id*. at 575. This "specify or waive" rule, contained in Rule 45(d)(2), applies equally in the context of a claim of attorney client privilege and claims of work product doctrine. *Id*. at 576. F. R. Civ. P Rule 45(d)(2), states:

> (2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

In the instant case, as in *Newparent*, Intervenor was "not without knowledge of the communications to which the subpoena pertained." *Id*. at 576. Intervenor has "made no effort to prepare a privilege log. That omission is fatal." *Id*. As the First Circuit stated:

> Privilege logs do not need to be precise to the point of pedantry. Thus, a party who possesses some knowledge of the nature of the materials to which a claim of privilege is addressed cannot shirk his obligation to file a privilege log merely because he lacks infinitely detailed information. To the contrary, we read Rule 45(d)(2) as requiring a party who asserts a claim of privilege to do the best that he reasonably can do to describe the materials to

which his claim adheres.

*Id*. at 576.

Accordingly, as an alternative holding, the Court holds that Intervenor's claim of

privilege fails because he failed, without justification to produce a privilege log."  *Id.* at 577.

In selecting a government privilege team or taint team[5], the Court notes with approval the

reasoning by U.S. District Judge Barbara S. Jones in *United States v. Richard Grant*, 04-CR-207

BSJ, S.D.N.Y. May 25, 2004 (Westlaw):

> [A] review of the documents by a privilege team would not waive
> Defendant's attorney-client privilege . . . . [A]fter the privilege
> team reviews the documents for privilege, the Defendant will have
> the opportunity to make objections to the Court before any
> documents are turned over to the taint team . . . . As Judge Koeltl
> noted in *United States v. Stewart*, 2002 WL 1300059 (S.D.N.Y.
> Jan. 11, 2002) the attorney client privilege "is based in policy,
> rather than in the constitution, and therefore cannot stand in the
> face of countervailing law or strong public policy and should be
> strictly confined within the narrowest possible limits underlying its
> purpose."  Stewart 2002 WL 1300059, at *5 (quoting *United States
> v. Goldberger & Dubin, P.C.*, 935 F.2d 501, 504 (2d Cir. 1991).

*Grant* at *2.  Judge Jones, in *Grant*, further noted that, as in the instant case:

> [T]here are no Sixth Amendment concerns in this case.  The seized
> documents were not in the files of a criminal defense lawyer, and
> relate to civil, not criminal litigation that predates the indictment in
> this case.
> . . . .

_____

[5]To follow Intervenor's proposed privilege protection proposal, which has his paralegal
review the documents, would give Intervenor knowledge of the specific documents that the
grand jury is receiving, to wit, of the information going before the grand jury.  This "mental
process" publication would violate grand jury secrecy.  To the extent that Intervenor says he
already has copies of the documents sought by the grand jury, he should have provided the Court
with a privilege log.  On the other hand, if Intervenor and/or his personal attorneys do not have
copies of these documents, his Intervenor paralegal proposal would give him an unfair preview
into the grand jury investigation and violate the secrecy of those proceedings.

> Permitting the Government's privilege team to conduct an initial review of the documents will narrow the disputes to be adjudicated and eliminate the time required to review the rulings of the special master or magistrate judge, thus reducing the possibility of delay in the criminal proceedings.
>
> This decision is based upon the expectation and presumption that the Government's privilege team and the trial prosecutors will conduct themselves with integrity.  It seems to me that the Government is entitled to that presumption and that society's interest in enforcing the criminal laws outweighs the limited incursion into the attorney client privilege that this process permits.

*Grant* at *3.

This Court concurs with Judge Jones' reasoning.  This Court is well aware of the high integrity of the two Assistant U.S. Attorneys assigned to this case, and their unit chief supervisor.

For the aforementioned reasons, this Court, having been fully advised by the pleadings and the hearings, denies Intervenor's request for an evidentiary hearing, denies Intervenor's Motion requesting that his lawyer's paralegal examine the documents at issue in the possession of Corporation, and grants the Government's request to utilize a privilege/taint team[6] to determine the existence of any potentially privileged documents.  Any such documents identified shall be submitted to the Court for a final determination.  At that point, if the Court determines that the documents might be deserving of attorney client and/or work product protection(s), the Court will require Intervenor to prove they were not exposed to third parties.

---

[6]The government's proposed taint team would consist of a postal inspector, and an Assistant United States Attorney to be named later who would review the subpoenaed documents for potentially privileged materials and segregate them accordingly.  These individuals would be screened from, and have no contact with the United Attorneys prosecuting the case against Intervenor.  TR at 38-39.

21

On an alternative ground, the Court denies Intervenor's Motion for failure to identify and produce copies of the documents at issue to the Court in support of his Motion to preserve privilege requiring the use of his paralegal to examine the documents at issue.

SO ORDERED.


s/Paul D. Borman_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  September 19, 2005

### CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on September 19, 2005.


s/Jonie Parker_____
Case Manager

22